UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK CHRISTOPHER CATO,

        Petitioner,

v.                         No. 2:10-CV-10603

THOMAS K. BELL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Michigan prisoner Derrick Christopher Cato ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529, and interfering with a police report, *id.* at § 750.483(A)(2)(A), following a jury trial in the Macomb Circuit Court. The court sentenced him to 120 to 270 months in prison. The petition raises claims concerning (1) the suggestiveness of a photographic identification procedure; (2) ineffective assistance of trial counsel; (3) prosecutorial misconduct; and (4) insufficiency of the evidence. For the reasons discussed below, the court will deny the petition and decline to issue a certificate of appealability.

## I. BACKGROUND

This Court recites the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> On December 18, 2004, Angela Smith and Crystal Griffith were working at a Tubby's Submarine shop in the city of Warren. At approximately 11:00 a.m., a man later identified as defendant walked into the restaurant and asked to use the restroom. After using the restroom, defendant approached the counter and announced a robbery. His right hand was positioned in his waistband as if he had a gun. He demanded money, which Smith turned over to him. He then took the telephone handset off the wall, told the employees not to move or call anyone for ten minutes, and walked out of the restaurant. Smith and Griffith observed him driving away in a white minivan and Smith wrote down the license plate number, which she provided to police. Approximately one hour after the robbery, Smith identified defendant as the robber at a photographic lineup. Griffith was unable to identify any of the lineup participants as the perpetrator. Defendant's theory of defense was misidentification, and he presented an alibi defense at trial.

*People v. Cato*, 2008 Mich. App. LEXIS 562, at *1-2 (Mich. Ct. App. Mar. 18, 2008)

Following his conviction and sentence, Petitioner appealed to the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The trial court erred, thereby denying Petitioner his right to due process, when it admitted a witness's in-court identification because the original photo lineup was unduly suggestive.
>
> II. Petitioner was denied the effective assistance of counsel when his counsel failed to call an expert in eyewitness identification.
>
> III. The prosecutor committed misconduct and Petitioner's trial counsel was ineffective for specifically failing to object to the prosecutor's comments that effectively shifted the burden of proof onto Petitioner.
>
> IV. There was insufficient evidence to support Petitioner's conviction of armed robbery.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he asserted in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because the Court was not persuaded that the questions presented should be reviewed. *People v.*

2

*Cato*, 758 N.W.2d 304 (Mich. 2008) (unpublished table opinion).

Petitioner then filed the instant petition, raising the same claims he presented to the state courts in his appeal of right.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, establishes the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under this standard, mere error by the state court does not justify issuance of the writ; rather, "the state court's [application of federal law] must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, (2000) (internal quotes omitted)).

Additionally, this Court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he

court gives complete deference to state court findings of historical fact unless they are clearly erroneous") (citation omitted).

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's

4

determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." 131 S. Ct. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. DISCUSSION

#### A. Suggestive Identification

Petitioner's first claim asserts that a photographic-lineup procedure utilized by the police was unduly suggestive. He asserts that the background of his photograph is lighter than the others and that his head appears smaller than the others. He argues that these differences "highlighted" his photograph for selection. He also contends that his photograph should not have been included in the array because it depicts him with facial hair whereas the witness said that her assailant did not have facial hair. Respondent argues that the state court adjudication of the claim was not unreasonable. "A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id.* The petitioner bears the burden of showing impermissible suggestiveness. *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

A photographic array is impermissibly suggestive if "'the picture of the accused,

5

matching descriptions given by the witness, so [stands] out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit.'" *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)); *see also Schawitsch v. Burt*, 491 F.3d 798, 803 (8th Cir. 2007) ("Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times."); *Jarrett*, 802 F.2d at 41 ("It is not required that all of the photographs in the array be uniform with respect to a given characteristic.").

In the present case, the trial court held an evidentiary hearing on Petitioner's claim. (*See* Evidentiary Hr'g Tr., Apr. 5, 2004, Dkt. # 6-2.) The identifying witness, Angela Smith, testified that Petitioner was the first customer of the day at the restaurant. (*Id.* at 25:14-19.) He asked to use the bathroom, and then he came to the counter and perused the menu board while standing in front of Smith, who was waiting to take his order. (*Id.* at 7:5-9:14.) After a brief conversation with her about menu choices, he announced the robbery and covered his face with a scarf. (*Id.*) Smith stated that this occurred in broad daylight in an empty restaurant and that she was focused on Petitioner the whole time. (*Id.* at 22:20-23:7; 25:14-19.) The lineup occurred about one hour after the incident, and Smith quickly picked out Petitioner's photograph. (*Id.* at 13:5-14.)

The trial court, reviewing the photographic array, found that it depicted six African-American males who all appeared to be approximately the same age, all had relatively close cropped hair, and five of them, including Petitioner, had some facial hair. (*Id.* at 88:7-15.) Petitioner's photograph was taken from the Michigan Department of

6

Corrections website, whereas the other ones were taken from police department records. (*Id.*) As a result, Petitioner's photograph shows a light colored cinder block background, while the other photos have a darker background. (*Id.*) Petitioner's photograph was also taken from a slightly greater distance. (*Id.*) The trial court noted that these differences were de-emphasized by turning the colored photographs into black-and-white photocopies for the identification procedure. (*Id.*) Based on its review of the photographs used and the testimony, the trial court found that the array was not unduly suggestive. (*Id.* at 88:16-89:10.)

The Michigan Court of Appeals agreed with this analysis. After reciting the proper constitutional standard, it found that the circumstances surrounding the identification showed that it was not unduly suggestive. *Cato*, 2008 Mich. App. LEXIS 562, at *2-4. The appellate court noted that Smith testified that she was not drawn to Petitioner's photograph because of the lighter background, and that she looked at each photograph starting from the top left and scanning across and down until she reached Petitioner's on the bottom right-hand corner. *Id.* She immediately recognized him as her assailant from the robbery that had occurred a mere hour beforehand. *Id.* The court also noted that inability of another employee present in the restaurant to identify

Petitioner's photograph was an indication that the photo was not "highlighted" for selection. *Id.*

The court finds that the state courts' adjudication of Petitioner's claim were not contrary to, and did not involve unreasonable applications of, clearly established law. The trial court held a hearing on the claim, after which it made findings of fact and

applied the correct constitutional standard in a reasonable fashion. The state appellate court then reviewed this decision by again applying the appropriate standard, and reaching a conclusion over which, at a minimum, "fairminded jurists could disagree." *Harrington,* 131 S.Ct. at 785-86.

Petitioner appended a copy of the photographic array to his petition. In reviewing the array, the court notes that the background of Petitioner's photograph is indeed lighter than the other ones, and that it was taken from a slightly greater distance. But these differences are not so significant as to render the array unduly suggestive. The fact that Smith told the police that the assailant did not have facial hair but Petitioner's photograph depicts him with some facial fair, is of no moment. Facial hair is not an immutable facial characteristic, and in any event, five of the six men in the array have some facial hair. Each photograph depicts an African-American male of approximately the same age and appearance. Petitioner's photograph certainly does not "'[stand] out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit.'" *Thai*, 29 F.3d at 808 (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)). The claim is without merit.

### B. Ineffective Assistance of Counsel

Petitioner's second claim asserts that his counsel was ineffective for failing to hire an expert witness to challenge the reliability of eyewitness identification testimony.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a criminal defendant has received ineffective assistance of counsel. First, a petitioner must prove that counsel's

performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Because Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the Michigan state courts, § 2254(d) governs review. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."

*Harrington*, 131 S. Ct. at 788 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

Under this standard, Petitioner's claim fails. With regard to the failure to call an expert on eyewitness identification testimony, federal courts have held that a defense attorney's cross examination of eyewitnesses is a sufficient method of attempting to deal with the issues presented. *See Dorch v. Smith*, 105 F. App'x 650, 653, 656-57 (6th Cir. 2004); *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at *1-2 (6th Cir. Sept. 26, 1996). The failure to call an expert witness on eyewitness identification does not satisfy the *Strickland* standard where defense counsel made a tactical decision not to call such a witness and cross-examined the eyewitnesses regarding inconsistencies in their identification of the petitioner. *See Dorch*, 105 F. App'x at 657. In short, "[n]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011); cert. den. 132 S. Ct. 230, 181 L. Ed. 2d 129 (2011).

The decision of the state appellate court was therefore not contrary to, nor did it involve an unreasonable application of, clearly established law. Petitioner is not entitled to habeas relief on this claim.

### C. Prosecutorial Misconduct

Petitioner's third claim asserts that the prosecutor committed misconduct. He notes that the prosecutor elicited testimony from Detective Brosnan that Petitioner's alibi

witnesses, including his mother and close friend, refused to talk to him prior to trial. In closing argument, the prosecutor argued that the refusal to cooperate with the police belied their credibility. Petitioner makes the related claim that his counsel was ineffective for failing to object to this line of testimony and argument.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). A court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, the Supreme Court has indicated that the state courts should be given a great amount of discretion when adjudicating prosecutorial misconduct claims "because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). None of Petitioner's allegations of prosecutorial misconduct have merit under this standard.

Nothing was improper about the complained of line of questioning and argument in this case. The prosecutor merely made the common-sense inference that if Petitioner's alibi witnesses were truly with him at the time of the robbery, one would expect that they would be eager to cooperate with the police and clear his name. A

prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). This may be done by highlighting inconsistencies or inadequacies in the defense, *see Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and pointing out the lack of evidence supporting the defense theory, *see United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). This is not a case of a prosecutor improperly using a defendant's exercise of his constitutional right to remain silent against him. The comments related to defense witnesses, not the accused. While the alibi witnesses were of course not legally required to speak to the police, they were afforded an opportunity to explain why they did not do so at trial. But their choice not to cooperate fairly allowed the prosecutor to assert that their testimony was unworthy of belief. No established law prevented that argument from being made. Because any objection would have been meritless, Petitioner's counsel was not ineffective for failing to object. These claims were therefore reasonably rejected by the state appellate court.

### D. Insufficient Evidence

Petitioner argues in his fourth claim that insufficient evidence was presented at trial to establish beyond a reasonable doubt that he was armed when he committed the robbery.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)) (internal citation and footnote omitted) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)) . A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id.* at 788. Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788-89. The Court does not need to be convinced that Petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The Michigan Court of Appeals addressed Petitioner's sufficiency-of-the-evidence claim and rejected it on the merits as follows:

> Defendant argues that the evidence was insufficient to support his armed robbery conviction because there exists no objective evidence that he was armed. Sufficient evidence of the "armed" element of armed robbery exists if "the circumstantial evidence presented was sufficient . . . for a rational trier of fact to conclude that defendant used some article, which includes his hand, to lead [a] complainant to reasonably believe defendant had a dangerous weapon." *People v. Taylor*, 628 N.W.2d 55 (Mich. App.

13

> 2001).
>
> Here, Smith testified that after defendant told her and Griffith that they were being robbed, he put his hand in the waistband of his pants underneath his coat and cupped it around something. She recalled that defendant had "done something with his body to make [them] look." In addition, Griffith testified that defendant had his hand clenched as if he was holding a gun. Accordingly, the evidence was sufficient for a rational trier of fact to conclude that defendant used his hand or another object to lead Smith and Griffith to reasonably believe that he had a gun. *Id.*

*Cato*, 2008 Mich. App. LEXIS 562, at *12-13.

The state appellate court did not unreasonably apply the clearly established standard when it rejected Petitioner's claim. The court recited the correct standard and applied it to the facts of Petitioner's case in an objectively reasonable way. As noted by the Michigan Court of Appeals, under state law, the prosecutor is not required to prove that a defendant was armed with a real weapon to sustain a charge of armed robbery. The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (quoting *People v. Turner*, 540 N.W.2d 728, 734 (Mich. App. 1995). The relevant statute defines "weapon" as "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." Mich. Comp. Laws § 750.529. A robbery can therefore be classified as an armed robbery even if it involved a feigned weapon "such as a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon." *People v. Jolly*, 502 N.W.2d 177, 181-82 (Mich. 1993).

Viewed most favorably to the prosecution, the evidence showed that Plaintiff put

14

his hand into his pocket in a manner that communicated to the victims that he had a weapon he would use if they did not comply with his demands. This evidence allowed the state appellate court to reasonably reject his sufficiency of the evidence claim.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the court's assessment of Petitioner's claims. The court will also deny Petitioner permission to proceed on appeal *in forma pauperis* because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed on appeal *in forma pauperis* is DENIED.

          s/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: July 25, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 25, 2012, by electronic and/or ordinary mail.

          s/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-10603.CATO.Deny.2254.bb.wpd